UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUSAN WILHELM,

                                                                        REPORT
                              Plaintiff,                              and
                    v.                                        RECOMMENDATION

EDEN CENTRAL SCHOOL DISTRICT, and                17-CV-01327Si(F)
SANDRA ANZALONE,

                              Defendants.
_____

APPEARANCES:        LAW OFFICE OF LINDY KORN, PLLC
                    Attorneys for Plaintiff
                    LINDY KORN and
                    WILLIAM F. HARPER, V, of Counsel
                    535 Washington Street
                    9th Floor
                    Buffalo, New York  14203

                    FERRARA FIORENZA P.C.
                    Attorneys for Defendants
                    MILES G. LAWLOR, of Counsel
                    5010 Campuswood Drive
                    East Syracuse, New York  13057


**JURISDICTION**

       This case was referred to the undersigned by Honorable Lawrence J. Vilardo on

January 25, 2018, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.[1]  The matter is presently before the court on

Defendants' motion for summary judgment (Dkt. 16), filed January 31, 2019.

---

[1] By Text Order entered January 5, 2020 (Dkt. 22), this action was reassigned to Honorable John L. Sinatra, Jr.

## BACKGROUND

Plaintiff Susan Wilhelm ("Plaintiff") commenced this employment discrimination action on December 22, 2017, alleging Defendants, including Plaintiff's former employer Eden Central School District ("the School District"), and Sandra Anzalone ("Anzalone"), Superintendent of Schools (together, "Defendants"), first reduced Plaintiff's workload and then terminated Plaintiff's employment based on Plaintiff's age and sex, and then retaliated against Plaintiff for engaging in activities concerning the alleged discrimination and for taking a medical leave.  Plaintiff's claims include sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), Complaint, First Claim, age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), *id.*, Second Claim, retaliation in violation of Title VII, ADEA, Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"), and the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act"), Complaint, Third and Fourth Claims, hostile work environment based on sex and age in violation of Title VII and ADEA, Complaint, Fifth and Sixth Claims, and sex and age employment discrimination in violation of 42 U.S.C. § 1983, Complaint, Seventh and Eighth Claims.  On January 24, 2018, Defendants filed their answer (Dkt. 3).

On January 31, 2019, Defendants filed the instant motion for summary judgment (Dkt. 16) ("Defendants' Motion"), supported by the attached Affidavit of Sandra Keith-Anzalone (Dkt. 16-1) ("Anzalone Affidavit") with exhibits A through Y (filed in one volume as Dkt. 16-2) ("Anzalone Exh(s). __"), the Affidavit of Jeffrey Cervoni (Dkt. 16-3) ("Cervoni Affidavit"), with exhibit A (Dkt. 16-4) ("Cervoni Exh. A"), the Attorney Affirmation of Miles G. Lawlor, Esq. (Dkt. 16-5) ("Lawlor Affirmation"), with exhibits A

through C (filed in one volume as Dkt. 16-6) ("Defendants' Exh(s). __"), Defendants'

Statement of Material Facts (Dkt. 16-7) ("Defendants' Statement of Facts"), and

Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Dkt.

16-8) ("Defendants' Memorandum").  On March 7, 2019, Plaintiff filed Plaintiff's

Memorandum of Law in Opposition to Motion for Summary Judgment by Defendants

Eden Central School District, and Sandra Anzalone (Dkt. 19) ("Plaintiff's Response"),

along with the Statement of Undisputed Facts (Dkt. 19-1) ("Plaintiff's Statement of

Facts"), the Declaration of William F. Harper, Esq. (Dkt. 19-2) ("Harper Declaration"),

with exhibits A through F (Dkts. 19-3 through 19-8) and G through H (Dkts. 20 and 20-1)

("Plaintiff's Exh(s). __").  On March 21, 2019, Defendants filed Defendants' Reply

Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 21)

("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED in part and

DENIED in part.

## **FACTS**[2]

On June 19, 2007, Defendant Eden Central School District ("the School District"),

hired Plaintiff Susan Wilhelm ("Plaintiff" or "Wilhelm"), as a probationary teacher on the

tenure track in English for grades 7-12, effective September 1, 2007, and Plaintiff was

assigned to teach at the School District's Junior/Senior High School housing grades 7

through 12.  Plaintiff competently performed her job as an English teacher for the three-

year probation period and on May 20, 2010, the School District's Board of Education

("the Board") granted Plaintiff tenure as an English teacher effective August 31, 2010.

---

[2] Taken from the pleadings and motion papers filed in this action.

As a tenured teacher for the School District, Plaintiff was a member of a collective bargaining unit represented by the Eden Teachers Association ("ETA"), which had a collective bargaining agreement ("CBA") with the School District.  For the 2014-2015 school year, Plaintiff, in addition to teaching English, was assigned to work in the Learning Lab.  On April 8, 2015, the Board voted to appoint Plaintiff as a probationary teacher in the tenure area for 7-12 Social Studies, retroactive to September 1, 2014, effectively giving Plaintiff credit for teaching Social Studies related classwork in the Learning Lab.  The ETA challenged this retroactive appointment contending Plaintiff's work in the Learning Lab did not qualify as teaching a Social Studies class, but the School Board declined to reverse the retroactive appointment.[3]  For the 2015-2016 school year, Plaintiff's teaching assignments were event split between English and Social Studies to ensure Plaintiff qualified for seniority credit in both tenure areas. Accordingly, Plaintiff taught three classes as a part-time English teacher and three classes as a part-time Social Studies teacher, yet earned seniority credit in both areas as a "full-time equivalent" ("1.0 FTE").[4]  At a May 17, 2016 School Board meeting,[5] several teachers were granted tenure, but Plaintiff was not then granted tenure in the Social Studies area.  At a May 23, 2016 School Board meeting, an anticipated budget gap for the 2016-2017 school year and the possible need for staff cuts was discussed, with Anzalone stating she "works hard not to cut the number of classes taught by

---

[3] The date of the School Board's decision not to reverse Plaintiff's retroactive appointment is not in the record.

[4] Teaching six classes constitutes a 1.0 FTE teaching position and a teacher is required to maintain at least a .4 FTE in any area for which a teacher seeks to accrue tenure seniority.  *See* Anzalone Dep. Tr. at 123 (Dkt. 20 at 124).

[5] Although the meeting date is at times referred to as May 18, 2016, the meeting minutes indicate May 17, 2016.  *See* Dkt. 16-2 at 857.

younger teachers."  Complaint ¶¶ 18-19.  On June 15, 2016, the School Board granted

Plaintiff tenure in the Social Studies area, effective July 14, 2016.[6]

On August 10, 2016, the School Board considered budget and enrollment issues

and voted to approve a proposal that reduced two full-time teaching positions to part-

time positions, including reducing a 1.0 FTE position in English to a .83 FTE position,

and to reduce a 1.0 FTE position in Social Studies to a .67 FTE position.  Because

Plaintiff was then the least senior tenured English 7-12 teacher, Plaintiff's English class

load was reduced from three classes to two, with Plaintiff's Social Studies class load

remaining at three classes, such that Plaintiff's FTE status was reduced from 1.0 to .83,

with a corresponding 17% reduction in salary representing the elimination of one of

Plaintiff's English classes.  One Michael Baronich ("Baronich"), a male teacher younger

than Plaintiff,[7] was the least senior teacher in the Social Studies tenure area and his

class load was reduced from six classes to four, representing an FTE status reduction

from 1.0 to .67 with a corresponding 33% reduction in salary.  Both Plaintiff and

Baronich taught for the School District for the 2016-2017 school year, albeit at their

respectively reduced schedules and salary.  On August 17, 2016, the School Board,

acting upon a recommendation by Anzalone, approved the hiring for the 2016-2017

---

[6]  Although several other teachers were, based on Anzalone's recommendation, granted tenure at the School Board's May 17, 2016 meeting, Anzalone did not formally recommend Plaintiff for tenure in the Social Studies area until the June 15, 2016 School Board meeting because Anzalone was awaiting the School Board's decision on the validity of Plaintiff's retroactive probationary appointment in the Social Studies tenure area.  Regardless, Plaintiff's tenure appointment was effective July 16, 2016, whereas for the teachers whose tenure was approved at the May 17, 2016 meeting, such tenure was not effective until August 31, 2016.  Accordingly, Plaintiff suffered no adverse effect in terms of seniority or salary as a result of the delayed tenure appointment, and Plaintiff does not argue otherwise.

[7]  The record does not disclose the age of either Plaintiff or Baronich, but Defendants do not dispute that Baronich is younger than Plaintiff.

school year of a music teacher, Peter Greisinger ("Greisinger"), and an elementary education teacher, Madison Hailand ("Hailand").

Plaintiff raised several challenges to the reduction in her workload and salary ("the reductions"). In particular, in August 2016, Plaintiff grieved the reduction of her salary according to procedures established in the CBA between the School District and the ETA ("CBA Grievance").[8] The CBA Grievance was first considered by Defendants on September 6, 2016, when Plaintiff attended a meeting where she alleged Defendant Sandra Anzalone ("Anzalone"), as School District Superintendent, discriminated against Plaintiff based on her age and sex, asserting Anzalone previously made two statements indicating Anzalone's preference for "younger teachers." Cervoni Affidavit ¶ 11. Plaintiff also asserted discrimination based on the School Board's approval of Plaintiff for tenure in the Social Studies area on June 15, 2016, instead of at an earlier meeting on May 17, 2016 when several other teachers were granted tenure. Because Plaintiff raised discrimination claims, the School District retained the Labor Relations Services of the Erie 2-Chautauqua-Cattaraugus Board of Cooperative Educational Services ("BOCES") to investigate Plaintiff's claims against Anzalone. BOCES attorney and Labor Relations Specialist Brian Hartmann ("Hartmann"), investigated Plaintiff's claims, interviewing Plaintiff and others Plaintiff identified as having information relevant to Plaintiff's claims ("BOCES Investigation"). On December 6, 2016, Hartmann released a report detailing the investigation and Hartmann's conclusion that there was no evidence of discrimination, harassment or retaliation against Plaintiff ("BOCES Investigation

---

[8] Anzalone Exh. E (Dkt. 16-2 at 18-21). For reasons unexplained, Plaintiff's CBA Grievance is dated September 12, 2016, yet Defendants refer to it as filed commenced "August 2016," Anzalone Affidavit ¶ 21, and September 6, 2016.

Report").[9]  By letter dated December 16, 2016, School Board President Paul Shepard ("Shepard") advised Plaintiff of the investigation results.

Plaintiff's CBA Grievance went through three levels of review, including on October 13, 2016, when Anzalone, as Superintendent, issued a "Level III" response denying the CBA Grievance, which denial was unanimously upheld by the School Board on November 28, 2016.  The ETA Grievance Committee declined to exercise its contractual right to pursue Plaintiff's CBA Grievance to arbitration.

On October 6, 2016, in connection with her then pending CBA Grievance, Plaintiff made a request pursuant to New York Freedom of Information Law ("FOIL") for information concerning schedules of other School District employees ("the FOIL request").  Although the School District provided Plaintiff with materials in response to the FOIL request, Plaintiff maintains the response was incomplete and filed an appeal to Anzalone who, by letter dated December 6, 2016, advised Plaintiff all requested documents had been provided and Plaintiff's appeal was denied as moot.  Anzalone further advised Plaintiff of her right to initiate a legal proceeding pursuant to Article 78 of New York Civil Practice Law and Rules ("Article 78 proceeding"), to challenge the denial of the FOIL request appeal.  Plaintiff did not commence the Article 78 proceeding.

An issue arose regarding Plaintiff's workday hours following the reductions. Because Plaintiff's teaching status was less than 1.0 FTE, Plaintiff was not required to report to work until her first teaching assignment of the day which was either the second or third class period depending on each day's schedule.  Plaintiff, however, arrived before the start of school each day.  By letter to Plaintiff dated December 2, 2016,

---

[9] Anzalone Exh. K (Dkt. 16-2 at 39-78).

School District Junior/Senior High School Principal Jeffrey Cervoni ("Cervoni"), clarified Plaintiff's start time and length of workday ("Cervoni Letter"),[10] advising that Plaintiff did not need to report for work until the start of her first teaching assignment of the day. The letter was necessitated by Plaintiff's failure to contact Cervoni regarding start and end times for her teaching schedule, Plaintiff's failure to request the ETA's assistance "in making an agreement for workday modifications, as it has been done in the past for others," and because "in the course of the grievance arising from the Board resolution appointing you to a 0.83 FTE position, you indicated that you have unilaterally chosen to mirror the hours of a 1.0 FTE to bolster your argument for compensation at that pay rate." Cervoni Letter at 1.

From January 2 to February 17, 2017, Plaintiff was on a medical leave from her teaching position. During her absence, Plaintiff's classes were taught by a substitute teacher, one Eric Rosiek ("Rosiek"), who was paid a long-term substitute rate of $ 85 per day.

On January 30, 2017, Plaintiff filed a claim with New York State Division of Human Rights ("DHR"), alleging employment discrimination by Anzalone and the School District based on Plaintiff's age and sex ("First DHR Complaint").[11] In particular, Plaintiff alleged she was demoted, paid a lower salary and given worse or different job duties than other employees with the same title. Plaintiff also asserted Defendants retaliated against her for complaining about the alleged discrimination.

---

[10] Filed as Anzalone Exh. I (Dkt. 16-2 at 33-35); Cervoni Affidavit Exh. A (Dkt. 16-4), and Plaintiff's Exh. G (Dkt. 20 at 212-14).
[11] Anzalone Ehx. Q (Dkt. 16-2 at 114-24).

On February 3, 2017, Plaintiff filed an improper practice charge with New York Public Employment Relations Board ("PERB"), further challenging the reductions, asserting the School District should have rearranged the class schedule to maintain Plaintiff's full-time status ("PERB charge").[12]  In June 2017, PERB declined to take any action on the PERB charge.

On April 3, 2017, Plaintiff commenced a second medical leave that continued through the end of the 2016-2017 school year on June 30, 2017. [13]

In early 2017, Anzalone directed Cervoni and other School District administrators including Loran Carter ("Carter"), and Kelly LaRosa ("LaRosa"), to review the School District's staffing needs for the 2017-2018 school year for possible cuts and personnel costs savings.  Cervoni, Carter, and LaRosa reviewed such relevant factors as existing staffing levels, current and future student enrollments and course requests to determine which cuts to propose in various academic areas at the Primary, Elementary, and Junior/Senior High School levels.  The proposed cuts included, *inter alia*, reductions in the Junior/Senior High School English and Social Studies programs.  Based on the recommendations, at a School Board meeting on May 17, 2017, the School Board voted to abolish three teaching positions for the 2017-2018 school year, including (1) a .415 FTE English 7-12 position, (2) a .67 FTE Social Studies position, (3) a .415 FTE Social Studies 7-12 position.  The School Board further voted to reduce a 1.0 FTE Business Education position to .60 FTE, and a 1.0 FTE Science position to .50 FTE.  Because

---

[12] Anzalone Exh. L (Dkt. 16-2 at 81-98).
[13] Plaintiff does not specify the condition for which she took the medical leave, but in connection with her First DHR Complaint, Plaintiff alleged she suffered emotional distress as a result of the asserted discrimination she was experiencing, manifested by panic attacks and hypertension, for which Plaintiff had requested a medical leave.  Dkt. 16-2 aat 122.

Baronich was the teacher with the least seniority in Social Studies 7-12 tenure area, his .67 FTE teaching position was abolished effective June 30, 2017. Plaintiff, as the least senior English teacher and the second least senior Social Studies teacher, saw both her .415 English and .415 Social Studies teaching positions abolished effective June 30, 2017.

By letter dated June 8, 2017, Anzalone advised Plaintiff her teaching position was being eliminated effective June 30, 2017 ("termination letter").[14] Plaintiff was further advised that because she was a tenured employee, for seven years Plaintiff would be on the Preferred Eligibility List from which laid off employees would be recalled in order of seniority for rehire.

On July 28, 2017, the DHR issued its Determination and Order After Investigation concerning Plaintiff's First DHR Complaint ("First DHR Decision"),[15] finding no probable cause to believe Defendants engaged in the alleged unlawful discriminatory practice in reducing Plaintiff's work load and salary for the 2016-2017 school year. The DHR determined that Plaintiff's teaching position was reduced because Plaintiff "is the least senior person in her department (English, for the middle/high school), and that a younger male in the Social Studies department, who is least senior in that department, received a more severe reduction (to .67 FTE)." First DHR Decision at 1. DHR further determined there was no merit to Plaintiff's retaliation claim based on her filing of the CBA Grievance and subsequent appeals because such activities did not reference any discrimination based on age or sex and, as such, did not qualify as protected activities. *Id.* On October 3, 2017, the Equal Employment Opportunity Commission ("EEOC"), adopting the findings

---

[14] Anzalone Exh. V (Dkt. 16-2 at 142-44).
[15] Anzalone Exh. R (Dkt. 16-2 at 125-27).

of the First DHR Decision and issued a Dismissal and Notice of Rights advising Plaintiff

of her right to further pursue her claims by commencing a legal action in federal or state

court.  First Right to Sue Letter.[16]

On December 20, 2017, Plaintiff filed a second complaint with New York DHR

("Second DHR Complaint"),[17] again asserting she was demoted, paid a lower salary

and given worse or different job duties than other employees with the same title for the

2016-2017 school year, and retaliated against for complaining about the alleged

discrimination, but newly alleging the recent termination of Plaintiff's tenured teaching

position for the 2017-2018 school year.  On June 18, 2018, the DHR issues its

Determination and Order of Dismissal for Administrative Convenience ("Second DHR

Decision"),[18] advising DHR would not be holding a hearing because Plaintiff had

indicated her intent to pursue legal remedies in federal court.  On August 13, 2018, the

EEOC issued its Notice of Right to Sue indicating the EEOC was closing its file on the

matter which Plaintiff intended to pursue in federal court.  Second Right to Sue Letter.[19]

This action followed on December 22, 2017.

## DISCUSSION

1.    **Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex*

---

[16] Anzalone Exh. S (Dkt. 16-2 at 128-29).
[17] Anzalone Exh. W (Dkt. 16-2 at 145-53).
[18] Anzalone Exh. X (Dkt. 16-2 at 154-56).
[19] Anzalone Ehx. Y (Dkt. 16-2 at 157-58).

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation. In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit

a reasonable juror to return a verdict in his or her favor on'" an essential element of a

claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec.*

*Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379

(2d Cir. 1992)). Once a party moving for summary judgment has made a properly

supported showing of the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence that

would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes*

*Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely

by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues

for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

"An issue of fact is genuine and material if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v.*

*Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v.*

*Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

Defendants argue in support of summary judgment that Plaintiff cannot establish

a *prima facie* case of employment discrimination based on sex or age, Defendants'

Memorandum at 11-17, cannot establish a hostile work environment, *id.* at 18-21, is

unable to establish retaliation, *id.* at 21-23, and seek an award of attorneys fees as the

prevailing parties in this action. *Id.* at 23-24. In opposition to summary judgment,

Plaintiff maintains she has direct evidence of age-based employment discrimination

rendering inapplicable the *McDonnell Douglas* burden-shifting analysis on which

Defendants rely, Plaintiff's Response at 8-9, Defendants have conceded several

elements of Plaintiff's ADEA and Title VII claims, *id.* at 9-18, Plaintiff has established a

hostile work environment, *id.* at 18-21, Defendants failed to oppose, and thus conceded, Plaintiff's retaliation claims, *id.* at 21-23, and Defendants have failed to establish Plaintiff's claims are frivolous so as to be awarded attorneys fees.  *Id.* at 23-25.  In further support of summary judgment, Defendants argue Plaintiff cannot establish any discrimination claim based on direct evidence, Defendants' Reply at 1-9, Plaintiff's discrimination and retaliation claims fail under the *McDonnell Douglas* burden-shifting analysis, *id.* at 9-10, and there is no merit to Plaintiff's hostile work environment claim. *Id.* at 10.

## 2.    Employment Discrimination

Plaintiff's First and Second Claims assert employment discrimination based on disparate treatment with regard to Plaintiff's sex, in violation of Title VII, and age in violation of the ADEA.  Regardless of the statutory basis, federal employment discrimination are analyzed "under the same burden shifting framework as set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *McGill v. University of Rochester*, 600 Fed.Appx. 789, 790 (2d Cir. Jan. 30, 2015) (citing cases).  *See Walsh v. New York City Housing Authority*, 828 F.3d 70, 74-75 (2d Cir. 2016) (claims of sex-based discrimination under Title VII), *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (age discrimination claims under ADEA).  Under the so-called "*McDonnell Douglas* burden shifting test," a plaintiff must first demonstrate a *prima facie* case for employment discrimination.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 76-77 (2d Cir. 2001).  "By making out this 'minimal' prima facie case, . . . the plaintiff 'creates a presumption that the employer unlawfully discriminated' . . . ."  *id.* at 77 (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)), and

then "the burden shifts to the defendant employer to articulate 'some legitimate, nondiscriminatory reason' for its action," *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802).  Should the defendant meet its burden, "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for [unlawful][20] discrimination...."  *Kirkland v. Cablevision System*, 760 F.3d 223, 225 (2d Cir. 2014) ("the employee's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination."  (internal quotation marks, alterations, and citation omitted)).

Insofar as Plaintiff maintains the *McDonnell Douglas* burden shifting test is not applicable here because Plaintiff relies on direct, rather than circumstantial evidence to establish her age-based employment discrimination claim, Plaintiff's Response at 8-9, the evidence which Plaintiff maintains is direct evidence of age-based discrimination is Anzalone's statement at the May 23, 2016 School Board meeting that she "works hard not to cut younger teachers."  Plaintiff's Response at 8-9.  Defendants characterize this statement, which Anzalone does not deny making, as "innocuous" asserting it "does not evince discriminatory animus on the basis of age."  Defendants' Reply at 2.

In support of her argument that the *McDonnell Douglas* burden-shifting does not apply where there is direct evidence of employment discrimination, Plaintiff relies on *TWA v. Thurston*, 469 U.S. 111, 121 (1985) ("the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination").  In contrast to the single statement here, which does not specifically mention Plaintiff and which is

---

[20] Unless otherwise indicated, bracketed material has been added.

subject to interpretation, evidence qualifying as "direct" for purposes of avoiding the

burden-shifting analysis is defined as ""'evidence which, if believed, proves the

existence of the fact in issue without inference or presumption.'"" *Walfish v.*

*Northwestern Mutual Life Insurance Company*, 2019 WL 1428364, at * 8 (S.D.N.Y. Mar.

29, 2019) (quoting *E.E.O.C. v. MCI Int'l, Inc.*, 829 F.Supp. 1438, 1447 (D.N.J. 1993)

(quoting Black's Law Dictionary 460 (6th ed. 1990))).  For example, at issue in *TWA* was

whether an airlines' written policy governing transfers which permitted pilot captains

displaced from their positions for reasons other than age to "bump" pilots with less

seniority violated the ADEA.  *TWA*, 469 U.S. at 117-18.  Similarly, the Second Circuit

held in the context of the Family Medical Leave Act the plaintiff presented direct

evidence of retaliation when the plaintiff, who prior to taking a medical leave received

only extremely positive teaching evaluations, was, upon returning from the leave, given

negative evaluations that penalized the plaintiff for taking excessive absences including

the absences taken as the approved medical leave.  *Donnelly v. Greenburgh Cent.*

*School Dist. No. 7*, 691 F.3d 134, (2d Cir. 2010) (considering such evidence to be direct

evidence of retaliation sufficient to avoid the burden-shifting analysis and requiring trial).

*See also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997) (age-based

employment discrimination plaintiff's testimony that employer official's statement

expressing surprise and disbelief at 56-year old plaintiff's statement that plaintiff wanted

to work until age 70, coupled with another official's statement that the company took "a

particular interest in young talented people," was direct evidence of defendant

employer's unlawful motive in terminating plaintiff).  Lacking in the instant case is any

indication that Anzalone's comment was directed toward Plaintiff, defining the

parameters for what Anzalone considers to be a "younger teacher," or that Anzalone's desire to retain the jobs of younger teachers would be at the expense of the jobs of older teachers.  *See Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (holding defendant employer's "stereotypical remarks about the incompatibility of motherhood and employment can certainly be [circumstantial] *evidence* that gender played a part in an employment decision . . . ." (internal quotation marks and citation omitted) (italics in original)).

That Anzalone's statement is not direct evidence of discriminatory intent against Plaintiff is consistent with the findings set for the in the BOCES Investigation Report which includes statements by other School District employees present at the May 23, 2016 School Board meeting who admitted hearing the statement but disagreed the statement conclusively established Anzalone's animus toward older teachers.  *See*, *e.g.*, BOCES Investigation Report at 9 (Dkt. 16-2 at 48) ("Mr. Cervoni did not believe [Anzalone's] comments were indicative of any animus against older teachers . . . ."); 18 (Dkt. 16-2 at 57) (Eden Junior/Senior High School Assistant Principal Patricia Menkiena asserting she did not know what Ms. Anzalone was thinking in making the comment regarding 'young teachers.').  That others present at the May 23, 2016 School Board meeting heard the statement yet did not understand the statement as indicative of Anzalone's age-based animus toward older teachers further establishes the statement is not direct evidence of age-based discrimination.  This single statement by Anzalone thus is too equivocal to constitute direct evidence of age-based discrimination; nevertheless, it is plausible that a reasonable jury could find Anzalone's statement constitutes circumstantial evidence of age-based employment discrimination.  *See*

*Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 150-51 (2d Cir. 2010) (finding trial court erred by excluding from evidence at race-based employment discrimination trial two statements attributed to supervisor, one uttered years before participating in challenged employment decisions, but the other made in close temporal proximity to the challenged employment decisions because the jury could reasonably have construed the statements as evidence of racial animus).  The court analyzes Plaintiff's employment discrimination claims under the ADEA according to the *McDonnell Douglas* burden-shifting standard.

A.    ***Prima Facie* Case of Discrimination**

Plaintiff claims she was subjected to employment discrimination in the form of disparate treatment based on her sex and age.  A *prima facie* case of employment discrimination based on disparate treatment in violation of Title VII or the ADEA requires the plaintiff show (1) membership in a protected class; (2) she was qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination.  *See Menaker v. Hofstra University*, 935 F.3d 20, 30 (2d Cir. 2019) (employment discrimination based on sex under Title VII); and *Bucalo v. Shelter Island Union Free School Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (employment discrimination under ADEA).  As relevant here, age is a protected class under the ADEA, whereas sex is a protected class under Title VII , 42 U.S.C. § 2000e-2(a)(2).  Plaintiff, a woman older than 40 belongs to the protected classes of age and sex thus establishing the first element of her employment discrimination claims which Defendants do not dispute.  Nor do Defendants dispute that Plaintiff was qualified for her tenured teaching positions in

English and Social Studies, or that the reduction of Plaintiff's workload and salary for the 2016-2017 school year, as well as the subsequent termination of Plaintiff's employment effective June 30, 2017 were adverse employment actions. Nevertheless, Defendants dispute that other actions, including the denial of Plaintiff's CBA Grievance, and Defendants' allegedly deficient responses to Plaintiff's FOIL request constituted adverse employment actions, and also dispute that the record establishes the fourth element, *i.e.*, that the adverse employment actions are causally related to Plaintiff's sex or age.

With regard to Plaintiff's Title VII and ADEA claim, Defendants' alleged deficient responses to Plaintiff's FOIL request, the denial of Plaintiff's CBA Grievance, and the asserted creation of a hostile work environment did not constitute adverse employment actions for purposes of establishing a *prima facie* case of age-based employment discrimination. Rather, Plaintiff failed to pursue her statutory remedy for challenging the responses to her FOIL request she received from the School District, *i.e.*, an Article 78 proceeding. Plaintiff references no caselaw to the contrary, and the court's research reveals none. Although Plaintiff asserts the denial of her CBA Grievance was an adverse employment action, it was Plaintiff's Union, not the School District or Anzalone, who refused to pursue the grievance. *See Brooks v. D.C. 9 Painters Union*, 2012 WL 955414, at *3 (S.D.N.Y. Mar. 15, 2012) (denying *pro se* plaintiff's motion for appointment of counsel in employment discrimination action against plaintiff's union because nothing in complaint alleged potential employer's failure to hire plaintiff was attributable to union's actions). Again, Plaintiff references no caselaw establishing a union's failure to pursue a grievance on behalf of a member can constitute an adverse employment action on behalf of an employer, and the court's research reveals none.

Further, with regard to the alleged creation of a hostile work environment, as discussed in connection with Plaintiff's hostile work environment claims, Discussion, *infra*, at 33-37, no evidence in the record supports a hostile work environment claim.

As such, the evidence on which Plaintiff relies in support of her Title VII and ADEA-based disparate treatment claim includes Anzalone's statement made at a May 23, 2016 meeting with "other officials from Defendant Eden [School Board] where the Defendants discussed the reduction of staffing," that Anzalone "works hard not to cut the number of classes taught by younger teachers," Complaint ¶¶ 18-19,[21] the fact that Plaintiff was not permitted to be assigned to teach one of the Social Studies classes included in Baronich's .67 FTE position despite the fact that Baronich had less seniority than Plaintiff, and that despite budget cuts necessitating the reduction of Plaintiff's and Baronich's teaching positions, Anzalone recommended, and the School Board approved, the hiring of two teachers younger than Plaintiff, including Greisinger, a male, for music and Hailand for elementary education for the 2016-2017 school year. *Id.* ¶¶ 20-22. Anzalone's May 23, 2016 statement, which Anzalone does not deny making, can be construed as indicating age-based animus against older teachers and thus creates an issue of fact of possible age-based animus. Moreover, New York courts have construed one of the state statutes on which Defendants rely, *i.e.*, New York Education Law §§ 2510[2] ("§ 2510[2]"), to require granting the request of a teacher

---

[21] Anzalone denies making a second alleged statement attributed to Anzalone, Anzalone Affidavit ¶ 37, *i.e.*, that "upon information and belief, in September of 2016 Defendant Anzalone stated to a teacher and a student teacher that 'it was nice to have younger teachers here to inspire the older ones.'" Complaint ¶ 26. This statement does not allege Plaintiff actually heard the second statement, but only that she understood, the alleged statement is hearsay which is inadmissible to avoid summary judgment. *See Finnegan v. Board of Educ. of Enlarged City School Dist. of Troy*, 30 F.3d 273, 274 (2d Cir. 1994) (holding hearsay statement that was inadmissible at trial was insufficient to create genuine issue of material fact to avoid summary judgment). Accordingly, the court will not further consider it.

whose tenured position is slated to be abolished to be assigned classes in another area in which the teacher is tenured and which were scheduled to be taught by a tenured teacher with less seniority.  *See Musorofiti v. Board of Education of South Huntington Union Free School District*, 485 N.Y.S.2d 572, 573 (2d Dep't) (rejecting defendant school district's argument that it was not required under § 2510[2], to accommodate through schedule adjustments displaced teacher whose, upon learning her workload was to be reduced because two of her previously assigned classes were being reassigned to another, more senior teacher, was denied a requested assignment of other classes taught by a yet more junior teacher), *aff'd*, 482 N.E.2d 1226 (N.Y. 1985); *Matter of Amos v. Board of Educ. of Cheektowaga-Sloan Union Free School District*, 388 N.Y.S.2d 435, 439-40 (4th Dep't 1976) (holding defendant board of education had burden of proving it was impossible to adjust class schedules to permit a tenured teacher to teach within his area of certification so as to prevent the abolishing of the petitioner's teaching job), *aff'd*, 372 N.E.2d 41 (N.Y. 1977).  Accordingly, Anzalone's May 23, 2016 statement and Defendants' staffing decisions at least establish an issue of fact as to whether the reduction of Plaintiff's workload and eventual termination was based on Plaintiff's sex or age so as to meet Plaintiff's burden regarding the *prima facie* case of discrimination, for which actions, as discussed below, Defendants have asserted legitimate, non-discriminatory reasons.

### B.    Legitimate, Non-Discriminatory Reason

Defendants, in support of summary judgment, attribute the reduction of Plaintiff's teaching position from full-time to part-time for the 2016-2017 school year, and the elimination of Plaintiff's teaching position for the 2017-2018 school year solely to

budgetary considerations, maintaining the cuts were in accordance with applicable New York laws which left Defendants with no discretion over what positions would be cut. Defendants' Memorandum at 14-16.  In opposition to summary judgment, Plaintiff argues Defendants had the option of "bumping" another teacher over whom Plaintiff had seniority, *i.e.*, Baronich, thereby permitting the Social Studies classes to be "shuffled" to permit Plaintiff to assume an additional Social Studies class to teach which would have maintained Plaintiff's status at 1.0 FTE, Plaintiff's Response at 3, Defendants spent money on other projects that could have been used to fund Plaintiff's teaching position, *id.* at 4, and Anzalone has much influence on the School Board's ultimate budgetary considerations which led to the reduction and then termination of Plaintiff's teaching position.  *Id.* at 4-7, 12-17.  In further support of summary judgment, Defendants argue the School District was not obligated to engage in "bumping" or "shuffling" of teachers across tenure areas, Defendants' Reply at 7, and the School District's budgetary decisions do not constitute evidence of discrimination.  *Id.*

As Defendants maintain, Defendants' Memorandum at 14-16, that when determining which teaching positions would be reduced or eliminated, the School District is required to comply with the provisions of New York Education Law ("N.Y. Educ. Law") §§ 2510[2] ("§ 2510[2]"), and 3013[2] ("§ 3013[2]"), that reductions and eliminations of tenured teaching positions be on the basis of seniority with those teachers with least seniority being the first to have their positions reduced or eliminated. In particular, § 2510[2] and § 3013[2] are essentially identical statutes governing the abolition of teacher positions by school boards with school districts with fewer than 125,000 inhabitants (§ 2510[2]), and by a trustee, board of trustees, board of education,

or board of cooperative educational services (§ 3013[2]).  As relevant, both statutes provide that where a teacher position is abolished, "the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued."  N.Y. Educ. Law §§ 2510[2] (McKinney's 1993), 3013[2] (McKinney's 1992).  It is undisputed that prior to the 2016-2017 school year, Plaintiff was the tenured English teacher with the least seniority, while in the Social Studies area, the tenured teacher with the least seniority was Baronich, followed by Plaintiff.

In arguing in support of summary judgment, Defendants rely on the meeting minutes from the School Board's August 10, 2016 and May 17, 2017 meetings. Specifically, at the August 10, 2016 meeting, the School Board voted to reduce an English teaching position from 1.0 FTE to .83 FTE, and a Social Studies teaching position from 1.0 FTE to .67 FTE, which reductions would, in accordance with §§ 2510[2] and 3013[2], affect Plaintiff and Baronich based on their respective seniority. August 10, 2016 School Board Meeting Minutes[22] at Bates 773 (Dkt. 16-2 at 13).  At the May 17, 2017 meeting, the School Board voted to abolish Plaintiff's tenured position in English and Social Studies, as well as Baronich's tenured position in Social Studies, which, pursuant to §§ 2510[2] and 3013[2], would result, based on seniority, in the termination of Plaintiff and Baronich, both of whom were to be retained on the Preferred Eligibility List for rehiring.  May 17, 2017 School Board Meeting Minutes[23] at Bates 863 (Dkt. 16-2 at 139).  Nor is there any evidence supporting Plaintiff's bald assertion, Plaintiff's Response at 16, that after eliminating one of Plaintiff's English classes, Defendants could have "shuffled" the Social Studies classes and "bumped" Baronich so

---

[22] Anzalone Exh. D (Dkt. 16-2 at 7-17).
[23] Anzalone Exh. U (Dkt. 16-2 at 132-57).

as to assign Plaintiff to teach an additional Social Studies class so and remain at 1.0 FTE, and thereby further reducing Baronich to .50 FTE.  Although New York caselaw establishes school districts are required to adjust class schedules and assign classes to teachers so as to avoid the termination of teachers with more seniority, *Musorofiti*, 485 N.Y.S. 2d at 573; *Matter of Amos*, 388 N.Y.S.2d at 439-40, Anzalone explained in connection with the BOCES investigation that in April or May 2016, prior to recommending which classes and corresponding teaching positions should be cut, Anzalone sought an opinion from the School District's attorney regarding whether Plaintiff or Baronich had more seniority in the Social Studies Department, and was advised Baronich had more seniority.  BOCES Investigation Report at 25 (Dkt. 16-2 at 64).  Plaintiff does not dispute this finding.[24]  Accordingly, the evidence in the record establishes there was no legal basis for Defendants to "shuffle" classes and "bump" Baronich by reassigning a Social Studies from Baronich to Plaintiff and maintain Plaintiff at 1.0 FTE.

It is significant that Plaintiff does not deny that the challenged reduction and elimination of teaching positions were predicated on budgetary considerations.  A workforce decision based on financial concerns is a legitimate, nondiscriminatory reason for an adverse employment action.  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) ("We have previously held that a [reduction in force] constitutes a legitimate, nondiscriminatory reason for termination of employment.").  Further, although Defendants had discretion to determine in which areas reductions would be made yet chose to reduce class offerings in the English and Social Studies areas, even

---

[24] Despite Plaintiff maintaining her seniority allowed her to "bump" Baronich, Plaintiff's Response at 16, neither party factually develops this issue and the court does not reach it.

a poor business decision (assuming, *arguendo*, Defendants' decision was dubious), will not support an employment discrimination claim. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."). Plaintiff's disparate treatment claims are further undermined by the fact that Baronich, who is male and younger than Plaintiff, also incurred a reduction in his workload for the 2016-2017 school year, as well as abolishment of his teaching position for the 2017-2018 school year and as such negates a material issue of fact requiring trial on Plaintiff's decision claims. *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Accordingly, Defendants have met their burden of establishing legitimate, nondiscriminatory reasons for the adverse employment actions of reducing and then eliminating Plaintiff's teaching position. The burden thus shifts back to Plaintiff to establish Defendants' proffered legitimate, nondiscriminatory reasons were mere pretext for sex and age-based employment discrimination in violation of Title VII and the ADEA.

### C.    Pretext for Discrimination

Where the defendant articulates a nondiscriminatory reason for its challenged actions, "the presumption of discrimination is rebutted and it 'simply drops out of the picture.'" *Cornell v. Consolidated Edison Co. of New York, Inc.*, 109 F.Supp.2d 202,

207 (S.D.N.Y. 2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)). The Plaintiff must then show, "without the benefit of any presumptions, that more likely than not the employer's decision was motivated at least in part by a discriminatory reason." *Id.* (citing *Grady v. Affiliated Center, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)). The plaintiff may do this by relying on the evidence already presented to establish a *prima facie* case, as well as any additional evidence. *Id.* "[B]ecause the fourth prong of the prima facie case in this context is proof of circumstances giving rise to an inference of discrimination, as a practical matter, there is little difference between the evidence that a plaintiff would present in proving just the prima facie case and pretext in proving the 'ultimate fact of discrimination.'" *Id.* at 208 n. 5. Furthermore, conclusory allegations unsupported by any evidence that an employer's legitimate, nondiscriminatory reasons for an adverse employment action are mere pretext for discrimination are insufficient to establish Plaintiff's burden under Rule 56(e) to avoid summary judgment. *Patterson*, 375 F.3d at 221 (affirming summary judgment where plaintiff presented only affidavit of challenged custom and practice of race discrimination in absence of any evidence that affiant had any connection with relevant department until after plaintiff was terminated).

In the instant case, in opposing summary judgment, Plaintiff, in addition to reiterating that Plaintiff's discrimination claims are not subject to the *McDonnell Douglas* burden-shifting analysis because they are based on asserted on direct evidence of discrimination, Plaintiff's Response at 17-18, also argues Defendants' assertion that the reduction in Plaintiff's teaching assignment was based on declining enrollments, and New York Education Law §§ 2510[2] and 3103[2] dictated the elimination of the least

senior teachers including Plaintiff is contradicted by Plaintiff's direct evidence that Anzalone stated she "works hard not to cut the younger teachers," *id.* at 15, that e-mails of Anzalone establish Defendants rely on "shifting and somewhat inconsistent explanations" for the reductions, *i.e.*, whether the reductions were based on declining enrollment and economic reasons, or based on statutes and Plaintiff's seniority status, *id.* at 15-16, especially given Defendants' proffered legitimate, nondiscriminatory reason for reducing and then abolishing Plaintiff's teaching position ignores that Anzalone chose the academic areas that would face reductions, *id.* at 16, and Plaintiff was entitled to assume additional teaching assignments from Baronich, a male who was younger than Plaintiff.  *Id.*  In further support of summary judgment, Defendants argue Plaintiff points to no evidence which could establish any animus on the part of Defendants was the "but-for" cause of the reduction of Plaintiff's class-load or the elimination of her teaching position, Defendants' Reply at 5-6, Anzalone's budget-related e-mails are not evidence of discriminatory animus but only of identification of positions and staff for potential cuts based on the School District's budget gaps, *id.* at 6, Defendants were not required to "bump" or "shuffle" teachers across tenure areas, *id.* at 7, and budget choices do not constitute evidence of discrimination.  *Id.*

As discussed above, Discussion, *supra*, at 15-18, Plaintiff's assertion that her claims are not subject to the *McDonnell Douglas* burden-shifting analysis is without merit and, thus will not be further considered.  Nor do the e-mails between Anzalone and other School District employees ("Anzalone e-mails")[25] establish that Anzalone "shifted" between declining enrollment and economic reasons, and statutory

---

[25] Plaintiff's Exh. E (Dkt. 19-7).

considerations and Plaintiff's seniority status in determining which classes and teaching positions to cut.  Rather, it is basic that such considerations are not mutually exclusive, with a school district's declining enrollment and financial concerns leading to reviewing a school district's budget, including class offerings and extra-curricular activities, to determine where cuts can be made to maximize offerings, yet ensuring any cuts comply with relevant laws.  Such considerations are evident from a plain reading of Anzalone's e-mails which establish Anzalone was discussing that reductions in both the School District's budget and enrollment pointed to the need to reduce staff, and was seeking input from her e-mail correspondents as to how to structure the cuts to minimize staff reductions while maximizing budgetary savings, including exhausting any surplus funds, offering early retirement incentives, and cobbling together various positions to maintain as many teachers at 1.0 FTE as possible.  Accordingly, a fair reading of Anzalone's e-mails do not support Plaintiff's argument that Defendants waffled between explanations for reducing  and abolishing teaching positions which could be construed as indicative of an unlawful motive in reducing and then eliminating Plaintiff's teaching position, and on this record no reasonable jury could find otherwise.

Accordingly, the record is devoid of any evidence upon which a reasonable jury could conclude that Defendants' legitimate, nondiscriminatory reason for reducing Plaintiff's teaching position to part-time for the 2016-2017 school year, and eliminating her teaching position for the 2017-2018 school year constituted mere pretext for sex or age-based employment discrimination.  Summary judgment thus should be GRANTED on Plaintiff's First and Second Claim that Plaintiff was subjected to disparate treatment based on her sex and age in violation of Title VII and the ADEA.

Even assuming, *arguendo*, that Plaintiff can establish a *prima facie* case of employment discrimination based on sex or age, Defendants have articulated legitimate, non-discriminatory reasons for the adverse employment actions which Plaintiff has failed to establish are mere pretext for discrimination. Summary judgment thus should be GRANTED in favor of Defendants on Plaintiff's First and Second Claims alleging employment discrimination based on sex in violation of Title VII, and age in violation of the ADEA.

**3.    Retaliation**

Plaintiff's Third and Fourth Claims allege retaliation in violation of Title VII, the ADEA, the ADA, and the Rehabilitation Act, asserting Defendants retaliated against Plaintiff for complaining about the reductions to her classes and salary for the 2016-2017 school year, and for taking a medical leave, by creating a hostile work environment, denying Plaintiff's CBA Grievance, and denying Plaintiff's FOIL request. Complaint, Third and Fourth Claims, ¶¶ 60-66. Claims for retaliation in violation of Title VII, the ADEA, the ADA, and the Rehabilitation Act are analyzed according to the same *McDonnell Douglas* burden-shifting framework applicable to employment discrimination claims. *See Blanc v. Sagem Morpo, Inc.*, 394 Fed.Appx. 808, 809 (2d Cir. Oct. 1, 2010) (considering Title VII retaliation claim under *McDonnell Douglas* burden-shifting test); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (analyzing ADEA retaliation claims under the *McDonnell Douglas* burden-shifting test), and *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (analyzing retaliation claims pursuant to ADA and Rehabilitation Act § 504 under *McDonnell Douglas* burden-shifting test). Simply put, the plaintiff must first establish a *prima facie* case of retaliation,

shifting the burden to the defendant to show a legitimate, non-retaliatory reason for the relevant adverse employment action, which then returns the burden to the plaintiff to establish such asserted reason is mere pretext for impermissible retaliation. *Blanc*, 394 Fed.Appx. at 809 (Title VII retaliation); *Gorzynski* (ADEA retaliation); *Jackson v. New York City Department of Education*, 768 Fed.Appx. 16, 17 (2d Cir. 2019) (ADA and Rehabilitation Act retaliation claims) (citing *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002), *superseded by statute on other grounds*).  In the instant case, the record establishes a *prima facie* case of retaliation under Title VII, the ADEA, and the ADA, but not under the Rehabilitation Act, however, the record also demonstrates Plaintiff fails to rebut the legitimate, non-retaliatory reasons Defendant proffers for the asserted adverse employment.

      A.    ***Prima Facie* Case of Retaliation**

As to Plaintiff's initial burden, to establish a *prima facie* case of Title VII and ADEA retaliation, "a plaintiff is required to show by a preponderance of the evidence that: (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff experienced an adverse employment action, as defined by the Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); and (4) a causal connection exists between the protected activity and the adverse employment action." *Id.* (citing *Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003)).  *See Gorzynski*, 596 F.3d at 110 (establish same elements for *prima facie* case of retaliation based on violations of Title VII and ADEA) (citing *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006)).

### 1.    Title VII and ADEA

With respect to the first element of a *prima facie* retaliation claim, activity that is protected against retaliation includes not only formal complaints filed with an agency such as the EEOC, or commencing a lawsuit, but also internal complaints made to management, *Raniola v. Bratton*, 243 F.3d 610, 624-25 (2d Cir. 2001) (citing cases), and "the plaintiff need not prove that her underlying complaint of discrimination had merit." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing cases).  Here, it is undisputed that Plaintiff's filing of the CBA Grievance, as well as the First and Second DHR Complaints alleging sex and age-based discrimination qualified as protected activity under Title VII and the ADEA.  Nor is there any dispute that the reduction and then abolishing of Plaintiff's teaching position qualified as adverse employment actions.  As discussed in connection with Plaintiff's disparate treatment claims, however, Discussion, *supra*, at 18-21, other actions, including Defendants' alleged deficient responses to Plaintiff's FOIL request, the denial of Plaintiff's CBA Grievance, and the asserted creation of a hostile work environment did not constitute adverse employment actions for purposes of establishing a *prima facie* case of retaliation under Title VII and the ADEA.  Furthermore, the same conduct that could be construed as establishing an issue of fact as to whether the adverse employment actions occurred under circumstances giving rise to an inference of discrimination based on age and sex for purposes of Title VII and the ADEA also could be construed as establishing an issue of fact as to a causal connection between Plaintiff's engaging in protected activity and the adverse employment actions.  Accordingly, the record establishes a *prima facie* case of retaliation in violation of Title VII and the ADEA.

### 2.    ADA and Rehabilitation Act

"'[T]he elements of a retaliation claim under either [the Rehabilitation Act] or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (brackets in original) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)). "'A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000))). In the instant case, the protected activity in which Plaintiff maintains she was engaged for purposes of the ADA and the Rehabilitation Act includes Plaintiff's First and Second DHR Complaints, the medical leaves Plaintiff took from January 2 to February 17, 2017, and from April 3 to June 30, 2017, and Plaintiff's filing of the instant action. Plaintiff's Response at 21-23.

Significantly, Plaintiff's First DHR Complaint did not allege discrimination based on disability, *see* First DHR Complaint (Dkt. 16-2 at 81-99), and both Plaintiff Second DHR Complaint, filed December 19, 2017, *see* Second DHR Complaint (Dkt. 16-2 at 114-24), and the instant action, filed December 22, 2017, were filed after Plaintiff's

employment was terminated effective June 30, 2017.  *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 n. 7 (2d Cir. 2008) (because plaintiff did not file an EEO complaint until after the plaintiff suffered the alleged retaliatory act by his supervisor, the plaintiff's alleged retaliation claim was insufficient); *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) (sufficiency of retaliation claim excludes "episodes of harassment that preceded her [the plaintiff's] protected activity[, including workplace complaints], since prior harassment could not have been in retaliation for acts not yet taken.") (underlining added).  Accordingly, Plaintiff's filing of the First and Second DHR Complaints, as well as the filing of the instant action did not constitute protected activity for purposes of the Rehabilitation Act.

With regard to Plaintiff's taking of medical leaves, the Rehabilitation Act, for the purposes of retaliation claims, limits "protected activity" to "'action taken to protest or oppose statutorily prohibited discrimination.'"  *Natofsky*, 921 F.3d at 353 (upholding summary judgment dismissing retaliation claim because plaintiff's appealing a negative performance review was not activity protected by the Rehabilitation Act (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by statute*).  Nevertheless, the use of a medical leave as a reasonable accommodation of a qualified disability[26] is protected activity under the ADA, *see Cady v. Bolivar-Richburg Central School District*, 2016 WL 8291111, at * 12 (W.D.N.Y. Nov. 28, 2016) (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)); *see also Clark*, 96 F.Supp.3d at

---

[26] Although the record does not specifically explain the nature of the disability for which Plaintiff's medical leaves were taken, Defendants do not dispute that Plaintiff's medical leaves were a reasonable accommodation of a qualified disability under the ADA.  Accordingly, the court presumes, for the sake of this discussion, that Plaintiff's medical leave was a reasonable accommodation of a qualified disability under the ADA for purposes of establishing Plaintiff engaged in protected activity for purposes of Plaintiff's ADA retaliation claim.

262 ("Plaintiff's claim that [Defendant] retaliated against her for taking disability leave satisfies the first element [of a *prima facie* ADA retaliation claim] because '[r]equesting a reasonable accommodation of a disability is an ADA protected activity.'" (citing cases)). Accordingly, only Plaintiff's use of the medical leaves qualifies protected activity under the ADA for purposes of retaliation.

### B.    Legitimate, Non-Retaliatory Reasons and Pretext for Retaliation

Upon establishing a *prima facie* case of retaliation, thereby meeting Plaintiff's initial burden, "a presumption of retaliation arises," shifting the onus to Defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). A *prima facie* case of retaliation, however, only establishes a rebuttable presumption of retaliation. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010). Further, once a defendant employer has submitted a neutral, *i.e.*, non-retaliatory reason for the alleged adverse action, "the presumption of retaliation dissipates," *Jute*, 420 F.3d at 173, and the burden shifts back to the plaintiff employee to demonstrate her participation in the protected activity "was a but-for cause of an adverse employment action, by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate nonretaliatory reasons for its action." and the employee must show that retaliation was a substantial reason for the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

For Plaintiff's Title VII, ADEA, and ADA claims for which Plaintiff has established a *prima facie* case of retaliation, the same legitimate, non-discriminatory reasons Defendants proffered in support of summary judgment on Plaintiff's discrimination

claims also constitute legitimate, non-retaliatory reasons for the adverse employment actions for which Plaintiff has failed to establish the existence of a genuine issue of material fact as to whether such reasons are mere pretext for unlawful retaliation.  In particular, Defendants have established, and Plaintiff has failed to sufficiently challenge as mere pretext for discrimination, that the reductions to Plaintiff's workload, and subsequent abolishing of her teaching position were based solely on budgetary considerations and required by relevant New York law.  *See* Discussion, *supra*, at 21-28.  Accordingly, Plaintiff cannot avoid summary judgment on her retaliation claims.

Defendants' Motion should be GRANTED with regard to Plaintiff's Third and Fourth Claims alleging retaliation in violation of Title VII, the ADEA, the ADA, and the Rehabilitation Act.

## 3.    Hostile Work Environment

Plaintiff's Fifth and Sixth Claims allege Plaintiff was subjected to a hostile work environment based on her sex and age in violation of Title VII and the ADEA[27] based on the reduction of Plaintiff's workload, *i.e.*, teaching assignments, Defendants' refusal to respond to Plaintiff's inquiry regarding her start time, Cervoni's letter regarding Plaintiff's attendance at work, the denial of Plaintiff's labor grievance, and the denial of Plaintiff's FOIL requests.[28]  Defendants argue in support of summary judgment that Plaintiff's hostile work environment claims are based on lawful conduct and a single statement which cannot support such claims.  Defendants' Memorandum at 18-21 (referencing Anzalone's remark offered at the May 23, 2016 School Board meeting that Anzalone

---

[27] Plaintiff does not allege she was subjected to a hostile work environment in violation of the ADA and the Rehabilitation Act.
[28] Plaintiff does not differentiate between her Fifth and Sixth Claims alleging a hostile work environment.

"works hard not to cut younger teachers").  In opposition to summary judgment, Plaintiff

argue that Defendants re-assert the same legitimate nondiscriminatory reasons

proffered in response to Plaintiff's disparate treatment claims, but fail to raise any

particular arguments addressing the elements of Plaintiff's *prima facie* hostile work

environment claims.[29]  Plaintiff's Response at 18-21.  In further support of summary

judgment, Defendants reiterate that no reasonable juror would find the "episodic and

isolated incidents" of lawful conduct and innocuous comments created a sufficiently

pervasive atmosphere of abuse.  Defendants' Reply at 10.

The criteria under which hostile work environment claims are analyzed are

significantly different than those relevant to the *McDonnell Douglas* burden-shifting

analysis employed in considering discrimination and retaliation claims.  *See Reynolds v.

Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (recognizing distinction between *McDonnell

Douglas* burden-shifting framework and hostile work environment analysis).  In

particular, to establish a hostile work environment claim, the plaintiff "must produce

enough evidence to show that 'the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'"

*Gorzynski*, 596 F.3d at 102 (analyzing hostile work environment claim under Title VII

based on race) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  "The

analysis of the hostile working environment theory of discrimination is the same under

the ADEA as it is under Title VII."  *Brennan v. Metropolitan Opera Association, Inc.*, 192

---

[29] The court notes that insofar as Plaintiff maintains Defendants have waived any defense based on Anzalone's statements being only "stray remarks," Plaintiff's Response at 9, Defendants raised the argument in their Memorandum filed in support of summary judgment.  Defendants' Memorandum at 21. Accordingly, there is no basis for finding the argument is waived.

F.3d 310, 318 (2d Cir. 1999). "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). *See Brennan*, 192 F.3d at 318 (providing the plaintiff must establish not only that he "subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Brennan*, 192 F.3d at 318 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). As such, the court must "look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (citing cases and quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Also to be considered is the extent to which the conduct occurred because of the plaintiff's membership in a protected class, here, sex and age. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (for purposes of Title VII, defendant employer must have created hostile work environment based on the plaintiff's sex); *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 241 (2d Cir. 2007) (to establish a hostile work environment under the ADEA, the plaintiff must prove she was subjected to the hostility because of her membership in a protected class

including, under the ADEA, age (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).  In the instant case, other than the undisputed facts that Plaintiff, at all time relevant to this action, was a female and thus covered by Title VII, and of sufficient age to invoke the ADEA's protection, the record is devoid of any facts which construed in Plaintiff's favor, in the view of a reasonable jury, could establish Plaintiff was subjected to a hostile work environment.

In particular, the incidents on which Plaintiff relies as establishing a hostile work environment include only employment decisions with which Plaintiff disagreed, responses to Plaintiff's various requests, and at most a single statement that can fairly be characterized only as innocuous.  Specifically, Plaintiff relies on the reduction of her class load and corresponding salary reduction based on declining student enrollment for the 2016-2017 school year, the elimination of Plaintiff's teaching position after June 30, 2017 based on district-wide budgetary considerations, the December 6, 2016 letter from Cervoni clarifying Plaintiff's start time, the denial of Plaintiff's labor grievance, and Plaintiff's Union's subsequent decision not to further pursue the grievance, the School District's alleged failure to fully respond to Plaintiff's FOIL request, and a single statement by Anzalone which Plaintiff maintains establishes Anzalone's preference for younger teachers.  As discussed in connection with Plaintiff's disparate treatment claims, however, these claims do not support any unlawful discrimination by Defendants against Plaintiff; rather, the labor decisions are merely routine employment decisions with which Plaintiff is unhappy, but which Defendants have established, and Plaintiff has not otherwise challenged, were in accordance with relevant law.  *See* Discussion, *supra*, at 19-21.  Defendants provided responses to Plaintiff's FOIL requests, and

despite her dissatisfaction with such responses, Plaintiff did not commence an Article 78
proceeding, a state law remedy which Plaintiff does not dispute was available to her,
such that no ruling on the sufficiency of the responses has been made by any court or
administrative agency.  Furthermore, even if Anzalone's two comments regarding
younger teachers can reasonably be construed as establishing a preference for younger
teachers over older teachers, the comments, made six months apart, and are far too
sporadic to support a hostile work environment.  *Brennan*, 192 F.3d at 318 (statements
asserted in support of hostile work environment must be "sufficiently continuous and
concerted in order to be deemed pervasive").  *See Mento v. Potter*, 2012 WL 1908920,
at *14 (W.D.N.Y. May 25, 2012) ("But even considered together, Plaintiff has only
submitted a laundry list of inconveniences, disagreements, and arguments, none of
which are of the type of severity or persistence necessary to sustain a hostile work
environment claim.") (comparing *Brown v. N.Y. State Dep't of Corr. Servs.,* 583
F.Supp.2d 404, 416–17 (W.D.N.Y.2008) (racial slurs, offensive sexual contact, threats,
punctured car tires, hard shoves and bumps, thrown metal objects, chain wrapped
around neck sufficient to support hostile work environment claim)).  In short, the events
and conduct on which Plaintiff's hostile work environment claims are predicated fall
short of what is required to be considered "objectively hostile and abusive."  *Liebovitz*,
252 F.3d at 188.

Accordingly, Defendants' motion for summary judgment should be GRANTED as
to Plaintiff's Fifth and Sixth Claims alleging hostile work environment.

**4.      § 1983 and Employment Discrimination**

With regard to Plaintiff's Seventh and Eighth Claims alleging Defendant Anzalone discriminated against Plaintiff based on Plaintiff's sex and age, "Section 1983, to the extent pertinent here, allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). These claims parallel Plaintiff's Title VII and ADEA employment discrimination claims, "except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 87 (2d Cir. 2015). See *Guerra v. Jones*, 421 Fed.Appx. 15, 17 (2d Cir. 2011) ("neither statute [Title VII nor ADEA] subjects individuals, even those with supervisory liability over the plaintiff, to personal liability." (citing cases). "Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Id.* (citing *Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122-23 (2d Cir. 2004)).

Section 1983, however, "is not itself a source of substantive rights." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). Rather, § 1983 merely provides 'a method for vindicating federal rights elsewhere conferred," *id.*, such as those conferred by § 1981. *Patterson*, 375 F.3d at 225. Indeed, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units. . . ." *Jett v. Dallas Independent School District*,

491 U.S. 701, 733 (1989).  As such, a § 1983 claim has two elements, including "(1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega*, 801 F.3d at 87 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)).

A § 1983 action may not, however, be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII. *See*, *e.g.*, *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir. 1993) ("A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant").  Nevertheless, "[a] Title VII plaintiff is not precluded from bringing a § 1983 cause of action," such as a claim for denial of equal protection, "so long as the § 1983 claim is based on a distinct violation of a constitutional right."  *Gierlinger v. New York State Police*, 15 F. 3d 32, 34 (2d Cir. 1994); *see*, *e.g.*, *Saulpaugh*, 4 F.3d at 143 (recognizing district court's dismissal of § 1983 claims would be vacated insofar as the plaintiff couched such claims in terms of the First Amendment and Fourteenth Amendment's Due Process and Equal Protection clauses so long as cognizable violations of these Constitutional provisions were alleged).

Here, Plaintiff's § 1983 claims for employment discrimination based on sex (Seventh Claim), and age (Eighth Claim), are asserted only against Defendant Anzalone.  Further, Plaintiff's § 1983 claims are couched in terms of violations of Title VII (sex), and the ADEA (age), Complaint ¶ 74, neither of which provides for liability against an individual, but only against an employer.  *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals . . . ." (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII

individual supervisors are not subject to liability.")); *Guerra*, 421 Fed.Appx. at 17 (neither Title VII nor ADEA subjects individuals to personal liability). Accordingly, Plaintiff cannot establish a § 1983 claim against Anzalone based on a violation of Title VII or the ADEA.

Summary judgment should be GRANTED as to Plaintiff's Seventh and Eighth Claims.

### 5.    Attorney Fees

Defendants seek an award of attorney fees under Title VII, the ADEA, and the ADA as the prevailing party in this action, arguing fees may be awarded where the plaintiff's action is frivolous, unreasonable, or without foundation even without a finding that the action was brought in subjective bad faith. Defendants' Memorandum at 23-24 (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), and *Supulski v. Dansville Cent. Sch. Dist.*, 2014 WL 7215184, at * 4 (W.D.N.Y. Dec. 17, 2014) ("*Supulski*")). According to Defendants, that the instant action is frivolous, unreasonable and without foundation is evidence from the complete absence of any evidence that the School Board's staffing decisions were motivated by Plaintiff's age or gender, but were guided by operation of §§ 2510[2] and 3013[2], and Plaintiff's admission that she was unaware how staffing decisions were made, *id*. at 24, as well as that prior to commencing this action, Plaintiff's various other grievances were determined to be without merit. *Id*. In opposition to Defendants request for attorney fees, Plaintiff maintain that the caselaw on which Defendants rely, specifically, *Supulski*, is inapposite because in that case the attorney fees were awarded to the defendant under "the most compelling circumstances" including that prior to commencing the action, the plaintiff

had settled her claim with the defendant school district. Plaintiff's Response at 23-25. Defendants do not argue in further support of their attorney fees request.

As Plaintiff asserts, attorney fees should be awarded to a defendant in an employment discrimination case "only under the most compelling of circumstances" *Supulski*, 2014 WL 7215184, at \*4 (quoting *Red Cloud-Owen v. Albany Steel, Inc.*, 958 F.Supp. 94, 97-98 (N.D.N.Y. 1997)). "'Plaintiff's subjective good faith or the absence thereof is not relevant to the issue of whether a fee award is warranted.'" *Red Cloud-Owen*, 958 F.Supp. at 97 (quoting *Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1012 (S.D.N.Y. 1982)). Further, a plaintiff's failure at administrative agencies and grievances prior to commencing legal action will not support an award of attorney fees to the defendants. *Id.* at 98. Nor is there any reason to find Plaintiff's claims are frivolous and unreasonable based on her lack of knowledge as to how Defendants determined which positions to cut to accommodate budgetary concerns; rather, in this case, Plaintiff's lack of knowledge may fairly be attributed to Defendants' less than clear explanations regarding the cuts. Although the court recognizes opinions may differ based on this record, nevertheless, as noted, Discussion, *supra*, at 24 n. 24, a generous reading of the record indicates Plaintiff's pursuit of this action may not have been without basis, especially with regard to the reduction in Plaintiff's classes for the 2016-2017 school year.

Accordingly, Defendants' request for attorney fees should be DENIED.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion (Dkt. 16) should be GRANTED in part with regard to Plaintiff's claims and DENIED in part with regard to Defendants' request for an award of attorney fees; the Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 11th, 2020
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        August 11th, 2020
             Buffalo, New York